IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

In re: Divine Tower             :        Case Nos.  2:04-cv-494
International Corporation,       :                   2:04-cv-584
                                :
        Debtor,                 :        JUDGE GRAHAM
                                :
                                :        Chapter 11
                                :
                                :        Judge Caldwell
                                :        (Case No. 02-55291)

_____

Divine Tower International      :
Corp., et al.,                  :
                                :
        Plaintiffs,             :
                                :
   v.                           :        Adv. Pro. No. 04-02169
                                :
Kegler, Brown, Hill & Ritter,   :
Co., L.P.A., et al.             :
                                :
        Defendants.             :


ORDER

    This case involves a dispute between Appolo Real Estate
Investment Fund IV, LP and the law firm of Kegler, Brown, Hill &
Ritter Co., L.P.A.  Appolo claims that it was misled by Kegler,
Brown when it invested money in Divine Tower International Corp.,
which is now in bankruptcy.  The Court has issued several earlier
orders relating to discovery issues, including an order dealing
with the question of whether documents subpoenaed by Kegler,
Brown from law firms representing Appolo - including the Columbus
Law Firm of Schottenstein, Zox & Dunn - were protected by the

attorney-client privilege.  The case is currently before the
Court to determine additional issues relating to that subpoena
raised in a motion to compel production filed by Kegler, Brown on
August 31, 2007 (doc. #80).

The motion to compel identifies three separate types of
documents which, according to Kegler, Brown, the Schottenstein
firm has improperly withheld: (1) documents "containing purely
factual information" collected as a part of the Schottenstein
firm's due diligence investigation; (2) the originals of
documents, containing a correct date, to replace documents that
were produced with incorrect dates and missing signatures; and
(3) enclosures and attachments to which documents already
produced make reference, but which were not attached to those
documents when they were produced.  The Court will deal with each
of these categories in turn.

I.

The first dispute revolves around the nature of documents
which the Schottenstein firm withheld on grounds of privilege
subsequent to this Court's April 10, 2007 order.  That order
concluded that Appolo had not waived the attorney-client
privilege it enjoyed with the Schottenstein firm simply by making
fraud claims in this case.  In upholding the claim of privilege,
however, the Court observed that factual information gathered by
Appolo's attorneys, including the Schottenstein firm, "is both
relevant and discoverable."  Order of April 10, 2007, at 5.  The
privilege applied only to "what [the law firms] communicated to
Appolo...."  Id.  The Court also concluded that if, as Kegler,
Brown argued, the Schottenstein firm had failed to produce non-
privileged documents, that failure "should be remedied
forthwith."  Id.  Kegler, Brown asserts that the Schottenstein
firm is still withholding more than 3,100 pages of documents and
that these documents "readily appear to be factual in nature."

2

Admission to Compel, at 5.  Those documents are described in more detail at pages 5-6 of the motion to compel.

The response to the motion to compel sheds some light on this issue.  First, Appolo notes that, after receiving the motion, and without waiving any applicable privilege, it has produced a number of the documents at issue.  See Memorandum in Opposition, at 7 n.2.  Second, it states that the balance of the documents are "a draft or copy of essentially the same ultimate document," namely a report dated September 30, 1999 prepared by the Schottenstein firm and submitted to Appolo.  Id. at 5. Because that document is itself a direct communication from attorney to client, Appolo contends that it is covered by the attorney-client privilege and that the Court's prior order did not direct it to produce that document.

Without having reviewed the document itself, it is somewhat difficult for the Court to determine whether Kegler, Brown's characterization of the document or Appolo's characterization is the more accurate.  However, the Court will attempt to restate what it believes to be the applicable law concerning documents of this nature.  If that does not assist the parties in resolving the producibility of this Report, it may be necessary either to order an *in camera* inspection of the document or to conduct a hearing.

Kegler, Brown is correct that it is entitled to learn, through discovery, all of the facts which the Schottenstein firm gathered as part of its due diligence inquiry.  Presumably, it could accomplish that task through a combination of discovery devices.  Kegler, Brown appears to have requested the Schottenstein firm to produce any documents which it either collected from third parties or generated internally, and these would be discoverable so long as the latter category of documents were not themselves communications from the Schottenstein firm to

3

Appolo or did not contain or reflect such communications.  A
representative of the Schottenstein firm could also be deposed
and could properly be asked to disclose what facts the
Schottenstein firm learned through its due diligence efforts,
regardless of whether those facts were communicated to Appolo.
The only area which would be placed off-limits by the attorney-
client privilege would be questions to a representative of the
Schottenstein firm asking about specific oral or written
communications with Appolo, and documents which were themselves
written communication between the Schottenstein firm and Appolo
or which repeated or reflected such written or oral
communications.

        To make these abstract principles somewhat more concrete,
the Court is willing to assume, as the Schottenstein firm has
represented, that after it collected information as part of the
due diligence process, it prepared a report about the results of
that investigation and submitted that report to Appolo.  The
Court further assumes that it is the report itself, and only that
report, which is being withheld on grounds of privilege.  Such a
report would be privileged because it represents a direct
communication from an attorney to a client about a matter
concerning which the client has sought legal representation and
advice.  Again, however, the Schottenstein firm could not refuse
to produce other documents to which the report refers simply
because those documents or excerpts from those documents were
incorporated into the report.  Additionally, the Schottenstein
firm could not refuse to answer questions at a deposition
concerning what information it learned during the due diligence
process even if  that information had been reiterated or
summarized in one or more privileged communications to Appolo.
In the end, therefore, the non-production of the privileged
document should not hinder Kegler, Brown from discovering exactly

what information the Schottenstein firm learned or was aware of through its due diligence process.

For these same reasons, representatives of Appolo could be asked the same types of questions and would have to testify truthfully as to what they knew about the transaction even if they learned that information from their attorneys' due diligence reports.  Similarly, however, they could not properly be asked to testify to the content of any communications from their attorneys, nor could they be required to produce in written form those communications.  In other words, there is no barrier to any type of discovery in which Kegler, Brown essentially asks: "Did you [Appolo or the Schottenstein firm] learn Fact A during the due diligence process?" even if the only written reference to Fact A is in a privileged communication.  On the other hand, it would not be proper to ask whether the Schottenstein firm communicated Fact A to Appolo, or Appolo learned Fact A as a result of such a communication, nor would it be proper to require production of any document in which Fact A was communicated between the parties.  Having said that, if the parties require further development of the record with respect to this particular document, they shall arrange a conference call with the Court to discuss the appropriate procedures.

## II.

The other two matters appear to be easily addressed and probably should not be the subject of motions practice.  With respect to incorrect dates having appeared on documents, according to both parties, the documents produced with incorrect dates were produced directly from an electronic database.  The database itself places the dates on the documents, and according to the Schottenstein firm, that feature of the electronic database cannot be disabled.  The Schottenstein firm contends that the way in which the documents were produced reflects the

way they were maintained in the ordinary course of business and
that it has no further obligation to re-produce the documents
without the erroneous dates.  It makes a similar argument with
respect to missing attachments, contending that if the documents
were produced in the ordinary course of business and did not have
the attachments appended to them, it has no obligation to produce
them in any other form.

In the Court's view, Kegler, Brown has the better of this
argument, as set forth in its reply memorandum.  Presumably,
somewhere there exist copies of these documents with correct
dates, without erroneous computer-generated dates, and with
proper attachments.  Even if these documents were at some point
converted into electronic form and stored in an electronic
database, it cannot be said that the hard copy originals are not
also kept "in the ordinary course of business."  When such
documents more accurately reflect the authentic documents in
question, they should be produced in that form.  The same would
be true of the original documents with attachments.  If, when the
documents were scanned or placed into an electronic database, the
attachments did not go with them, but the attachments are still
maintained as part of a hard copy file, the hard copies of the
documents should be produced with attachments.

The only argument which could be made in response (and which
the Schottenstein firm does not appear to be making) is that hard
copies of the documents are no longer available, that the only
version of the documents remaining in existence is the electronic
version, and that there is no way to retrieve the documents from
the electronic database either without the erroneous date, with
signatures, or with the original attachments.  If that is true,
this issue should be discussed further between the parties.  In
particular, they should discuss whether any of these
irregularities would prevent a stipulation that the documents are

authentic and were actually signed or that whatever other documents which were purported to be attached to the produced documents were, in fact, attached when the documents were either sent or received.

III.

Based upon the foregoing, Kegler, Brown's motion to compel (doc. #80) is granted as described above.  If the parties, even with this order, cannot resolve the issue about producibility of the due diligence report, they shall contact the Court to request further proceedings.  The other documents described above shall be produced in original form within 15 days or, alternatively, an affidavit shall be provided addressing the matters described above and verifying that no such production is possible.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.


/s/ Terence P. Kemp
United States Magistrate Judge


7