# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Divine Tower International : 
Corporation, et al., 
                                           :     Case Nos.    2:04-cv-494
        Plaintiffs,                                           2:04-cv-584
                                           :
    vs.
                                           :     JUDGE GRAHAM
Kegler, Brown, Hill & 
Ritter Co., L.P.A., et al.,                :

        Defendants.                        :


## OPINION AND ORDER

      This matter began as an adversary proceeding filed in bankruptcy court by debtor Divine Tower International Corporation and its related entities. Divine Tower brought the action against the law firm Kegler, Brown Hill & Ritter Co., L.P.A. and four individual attorneys, Charles Kegler, Todd Kegler, John Thomas, and Michael Zatezalo, employed by Kegler Brown. In 1999, Divine Tower retained Kegler Brown to provide legal assistance as Divine Tower attempted to secure financing for its construction business. Over the next 3 years, Kegler Brown continued to provide various legal services to Divine Tower. Divine Tower alleges in the complaint that defendants simultaneously provided legal representation to members of the Divine Family, who controlled Divine Tower and allegedly executed a scheme to defraud the company.

      Apollo Real Estate Investment Fund IV, L.P. was also a plaintiff to the adversary proceeding. Apollo provided financing to Divine Tower, and it brought claims against Kegler Brown relating to the financing transactions that Apollo had entered into. Apollo brought additional claims in its capacity as an assignee of KeyBank, N.A., who also provided financing to Divine Tower.

      The reference to the bankruptcy court was withdrawn because a large majority of the claims were non-bankruptcy tort and statutory claims. The court's September 4, 2007 order dismissed certain claims and other claims were dismissed in a March 11, 2009 stipulated partial dismissal, so the only claim

of the plaintiffs remaining in this case is Divine Tower's preference claim under 11 U.S.C. § 547(b)(4)(A) of the Bankruptcy Code. The complaint alleges that Divine Tower paid $63,507.18 to Kegler Brown on February 22, 2002, two months before Divine Tower filed for bankruptcy on April 24, 2002. Divine Tower argues that the transfer is avoidable because it was made on an antecedent debt within 90 days of the petition date.

Also remaining in this action is Kegler Brown's counterclaim for breach of contract. Under a 2005 Settlement Agreement, Divine Tower and Apollo released their claims against the Divine Family and the Divine Family's attorneys for their alleged conduct in defrauding the company. The counterclaim alleges that Divine Tower and Apollo breached the Settlement Agreement's covenant not to sue by bringing certain claims in this lawsuit – claims that this court ruled in the September 4, 2007 order were released by the Agreement. Kegler Brown argues that the measure of damages for breach of the covenant not to sue should be the attorney fees they have incurred in relation to the released claims.

Both of the remaining claims are now before the court on motions for summary judgement. For the reasons stated below, Divine Tower is granted partial summary judgment on its preference claim, and Kegler Brown is granted summary judgment on its counterclaim for breach of contract.

**I.      STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993). The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case at issue, LaPointe, 8 F.3d at 378, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005); Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993). In

response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Thus, "[o]nly disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." Daugherty, 544 F.3d at 702 (quoting Anderson, 477 U.S. at 248).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

**II.     PROCEDURAL ISSUES**

Before examining the substance of the remaining claims, the court will address three procedural matters. First, Divine Tower argues that Kegler Brown's motion for summary judgment on the preference claim was untimely filed one day after the deadline. The court's case management order (doc. 138) set a deadline of November 16, 2008 for filing dispositive motions. Kegler Brown filed its motion on November 17, 2008. However, November 16, 2008 was a Sunday, and Fed. R. Civ. P. 6(a)(3)

provides that when the last day for filing a paper in court is a Sunday, the deadline for filing will be extended to the next day that is not a legal holiday. Thus, Kegler Brown's motion for summary judgment on the preference claim was timely filed.

Next, Kegler Brown argues that Divine Tower's cross-motion for summary judgment on the preference claim was untimely filed. On December 18, 2008, Divine Tower filed a joint response brief to Kegler Brown's motion for summary judgment and its own cross-motion for summary judgment. Though the cross-motion was filed a month late, the court will consider the motion because there is no evidence that Divine Tower acted in bad faith or that Kegler Brown has suffered any prejudice. See Great American Ins. Co. v. U.S., 552 F.Supp.2d 703, 706 (S.D. Ohio 2008) (declining to strike motion for summary judgment filed six weeks late where there was no bad faith or prejudice). As to the lack of bad faith, the court notes that the parties held a settlement conference with the magistrate judge on December 9, 2008 and that Divine Tower was granted an extension to file its opposition to Kegler Brown's motion for summary judgment. And as to the lack of prejudice, the court notes that the reasons presented by Divine Tower in opposing Kegler Brown's original motion were the very same grounds that Divine Tower presented for why it was entitled to summary judgment. Further, Kegler Brown was granted leave to file a surreply so it could have an opportunity to fully respond to the cross-motion.

Finally, Divine Tower contends that Kegler Brown has waived the "ordinary course of business" defense, 11 U.S.C. § 547(c)(2), that it raises in its motion for summary judgment on the preference claim. The "ordinary course of business" exception is an affirmative defense to a preference claim. See In re Arrow Air, Inc., 940 F.2d 1463, 1465 (11th Cir. 1991); In re Energy Co-op. Inc., 832 F.2d 997, 1000 (7th Cir. 1987); In re Allied Carriers' Exchange, Inc., 375 B.R. 610, 615-16 (10th Cir. B.A.P. 2007); In re Fisher, 100 B.R. 351, 355-56 (Bankr. S.D. Ohio 1989). Affirmative defenses are to be set forth in a party's response to a pleading. See Fed. R. Bankr. P. 7008(a) (incorporating Fed. R. Civ. P. 8(c)). It is undisputed that Kegler Brown did not plead an affirmative defense in its answer to the preference claim.

Failure to plead an affirmative defense may result in a waiver of that defense. Old Line Life Ins. Co. of Am. v. Garcia, 418 F.3d 546, 550 (6th Cir. 2005); Phelps v. McClellan, 30 F.3d 658, 663 (6th Cir.

4

1994). But such failure does not always result in waiver, especially when the other party has an opportunity to respond to the affirmative defense and no prejudice results. See Stupak-Thrall v. Glickman, 346 F.3d 579, 585 (6th Cir. 2003) ("Because the plaintiffs had a fair opportunity to respond to the government's statute of limitations argument, we find that the plaintiffs suffered no prejudice and, therefore, the government did not waive their defense."); Old Line, 418 F.3d at 550; Smith v. Sushka, 117 F.3d 965, 969 (6th Cir. 1997); Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1445 (6th Cir. 1993).

The court finds that Kegler Brown's failure to plead the "ordinary course of business" exception in its answer should not result in waiver of the defense. That Kegler Brown is invoking the exception is not a surprise. In its answer, Kegler Brown admitted Divine Tower's allegation that it had paid Kegler Brown $63,507.18 for legal services within 90 days of when Divine Tower filed for bankruptcy. Yet, the answer denied Divine Tower's preference claim. There are few grounds other than the "ordinary course of business" exception on which Kegler Brown could admit that the payment was made within 90 days of the petitions date but still deny that the payment constituted a preferential transfer.

Divine Tower has been afforded a full opportunity to respond to the defense. Just as Kegler Brown was given leave to file a surreply to the cross-motion for summary judgment, Divine Tower was allowed to submit 5 filings (docs. 214, 215, 216, 230, 233) concerning the defense. See Mickowski v. Visi-Trak Worldwide, LLC, 415 F.3d 501, 506 (6th Cir. 2005) ("The purpose of Rule 8(c) is to give the opposing party notice of the defense and a chance to argue, if he or she can, why the defense lacks merit."). Moreover, there is no prejudice to Divine Tower because the evidence most pertinent to the defense – legal invoices billed by Kegler Brown to Divine Tower – has been in Divine Tower's possession all along and are even attached as exhibits to Divine Tower's complaint.

## III. BANKRUPTCY PREFERENCE CLAIM

There is no dispute that Divine Tower has made out a *prima facie* case of a preferential transfer under § 547(b)(4)(A) as to the $63,507.18 payment made on February 22, 2002. The only issue is whether Kegler Brown is entitled to keep the payment under the "ordinary course of business"

5

exception. The trustee cannot avoid a transfer:

> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

Kegler Brown regularly provided legal services to Divine Tower from February 1999 to March 2002. See Decl. of Todd M. Kegler, ¶ 2; Am. Compl, Ex. 42. It provided services on "such matters as contract negotiations and disputes, construction litigation, employee agreements, employment litigations, and trademark matters." Decl. of Todd M. Kegler, ¶ 2. The "ordinary practice" was for the firm to send itemized monthly bills to Divine Tower, who paid the bills several months after the invoice date. Id., ¶¶ 28-29. Divine Tower's "usual practice was to save up a number of monthly bills and pay them all at once" by check or wire transfer. Id., ¶29. The February 22, 2002 check sent to Kegler Brown by Divine Tower was in payment for a group of invoices billed from February 2001 to January 2002. See Report of Plaintiff's Expert Alfred T. Giuliano, p. 8, Exs. 10, 11.

The arguments of the parties are straightforward. Kegler Brown argues that the February 22, 2002 payment was in the ordinary course of dealings between the parties. It was for a type of debt, owed on the provision of legal services, regularly incurred by Divine Tower with Kegler Brown over the previous 3 years. The payment was made in the ordinary course of affairs – Divine Tower normally saved up many months of invoices and made a lump sum payment by check.

Divine Tower does not dispute those aspects of what Kegler Brown says about the parties' dealings. Instead it argues that in addition to billing Divine Tower for services provided to the company, Kegler Brown also made a practice of improperly billing Divine Tower for legal services that it provided to members of the Divine Family in their personal capacities. Those personal legal services included tax and estate planning. Divine Tower argues that any payment it made for personal legal services provided to the Divine Family cannot be considered as being in the ordinary course of business.

6

According to Divine Tower, the evidence shows that at least part of the February 22, 2002 payment was for personal legal services.

Kegler Brown's response is that Thomas Divine, CEO of Divine Tower, instructed Kegler Brown to bill Divine Tower for the personal legal services provided to the Divine Family because that is what his employment contract provided for. "Thomas Divine gave this instruction at the beginning of Kegler Brown's engagement and never altered the instruction. . . . Mr. Divine specifically directed that the legal bills for representation of the Divine Family Group and for estate- and tax-planning services provided to Mr. Divine and his wife, Stephanie Divine, be sent to [Divine Tower]. I understood from him that [Divine Tower] would be paying for such personal services under his employment agreement." Decl. of Todd M. Kegler, ¶ 5.

Despite having the opportunity to take discovery, Kegler Brown has not submitted to the court Mr. Divine's employment agreement allegedly containing a provision for the company to pay his personal legal services. Mr. Kegler's statement of the what the agreement said is hearsay and is not admissible in summary judgment proceedings. U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185, 1189 (6th Cir. 1997); Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir. 1996).

The court finds that absent proof of an agreement, Divine Tower's payment of personal legal services was not for "a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee," nor was it "made according to ordinary business terms." 11 U.S.C. § 547(c)(2). Simply put, Kegler Brown has not established that the debt owed for personal legal services was incurred in the ordinary course of Divine Tower's business or financial affairs with Kegler Brown. Nor has Kegler Brown demonstrated that it is ordinary business terms for a company to pay for the personal legal services of its employees.

Accordingly, the court finds that the February 22, 2002 payment is a preference to the extent it was for a debt owed on personal legal services provided by Kegler Brown to the Divine Family. In determining what portion of the payment was for personal legal services, the court has examined the following: (1) the invoices attached to the complaint as exhibits 32-37 and acknowledged as authentic in Kegler Brown's answer; (2) the report of plaintiff's expert Alfred T. Giuliano; and (3) the declaration

7

of Todd. M. Kegler. These pieces of evidence show that $21,859.75 of the February 22, 2002 payment was for personal legal services.

The Kegler declaration concedes that Kegler Brown billed $21,698.25 to Divine Tower for personal legal services provided to the Divine Family. The declaration contains an itemized listing of those services, with the date of service, a description of the service, the hours billed, and the amount billed. The Giuliano report and the invoices establish that each of the services listed in the Kegler declaration were paid for by the February 22, 2002 payment. The report and invoices also show one item not included in the Kegler declaration that should have been included – Invoice #335800, see Compl., Ex. 37. This invoice has a subject line of "Tax Planning," and the entries describe personal tax planning provided to one of the Divine Family members. The amount billed in Invoice #335800 and paid for by Divine Tower on February 22, 2002 was $161.50. Thus, the court adds this amount to the amount stated in the Kegler declaration for a total of $21,859.75 in personal legal services that Divine Tower paid for in it February 22, 2002 payment.

Accordingly, the court finds that Divine Tower is entitled to partial summary judgment on its preference claim. Divine Tower has demonstrated under 11 U.S.C. § 547(b) that it may avoid $21,859.75 of the February 22, 2002 transfer made by Divine Tower to Kegler Brown. However, as to the remainder of the transfer, $41,647.43, Kegler Brown has established that it is entitled to summary judgment under the "ordinary course of business" exception of § 547(c)(2).

## IV. COUNTERCLAIM FOR BREACH OF CONTRACT

### A. Background

The origin of the counterclaim starts with a 2005 Settlement Agreement entered into by Divine Tower, Apollo, and the Divine Family. The Settlement Agreement contained a release provision whereby Divine Tower and Apollo each agreed to "release . . . and covenant not to sue the Divine Family (collectively and individually) . . . and all of their respective agents, . . . [and] attorneys . . . from any and all causes of action, charges, attorneys' fees, costs, claims, demands, damages, losses, expenses, liabilities, obligations, and actions whatsoever, whether in tort, in contract, or pursuant to statute or

8

regulation or otherwise . . . ." Settlement Agr., ¶¶4,5.

The Settlement Agreement had many different signatures, with the final ones having a date of August 2, 2005. By that point, Divine Tower and Apollo had already filed the instant lawsuit against Kegler Brown. On August 30, 2005, Divine Tower and Apollo filed a motion for leave to file an amended complaint, and leave was granted. The amended complaint asserted twelve claims against Kegler Brown and the individual attorneys. Divine Tower brought six claims: fraud, civil conspiracy, civil aiding and abetting, malpractice, unjust enrichment, and a preference claim under 11 U.S.C. §547. Apollo brought three direct claims: fraud, conspiracy, and violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b). Apollo also brought three claims as an assignee of KeyBank: fraud, conspiracy, and aiding and abetting.

Kegler Brown filed a motion for summary judgment, arguing that the Settlement Agreement had released all of the claims brought in the amended complaint. The court granted the motion for summary judgment in part. In its September 4, 2007 order, the court held that Divine Tower and Apollo had released their claims arising out of the Kegler Attorneys' alleged actions in representing the Divine Family. The court held that the Settlement Agreement did not, on the other hand, release claims arising out of the Kegler Attorneys' representation of Divine Tower, the company, and not of the Divine Family. The result of the court's ruling was that the five claims for conspiracy and aiding and abetting were dismissed, as was the part of Apollo's fraud and Section 10(b) claims arising out of the Kegler Attorneys' legal representation of the Divine Family.

After the Court's ruling, Kegler Brown and the Kegler Attorneys filed a counterclaim against Divine Tower for breach of the Settlement Agreement. The counterclaim alleges that Divine Tower and Apollo breached the Settlement Agreement's covenants not to sue by bringing the claims that this court held were released by the Agreement.

Divine Tower and Apollo then filed a motion to dismiss the counterclaim. They argued that the Kegler Attorneys lacked standing to sue for breach of contract because they were not parties to the Settlement Agreement and were not third-party beneficiaries. In its September 24, 2008 order, the court denied the motion to dismiss:

9

In Ohio, a non-party may not assert contract rights unless it is a third-party beneficiary under the contract or such standing is conferred by statute. Thornton v. Windsor House, Inc., 57 Ohio St.3d 158, 161, 566 N.E.2d 1220, 1223 (Ohio 1991). "A third-party beneficiary is one for whose benefit a promise has been made in a contract but who is not a party to the contract." Perrysburg v. Toledo Edison Co., 171 Ohio App.3d 174, 181, 870 N.E.2d 189, 194 (Ohio Ct. App. 2007). . . .

In determining when a third party is an intended beneficiary, as opposed to an incidental beneficiary, the Ohio Supreme Court has referred to the Restatement of the Law of Contracts. Hill v. Sonitrol of Southwestern Ohio, Inc., 36 Ohio St.3d 36, 40, 521 N.E.2d 780, 784 (Ohio 1988). "[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Id. (quoting Restatement of the Law 2d, Contracts, § 302 (1981)). See also Norfolk & Western Co. v. United States, 641 F.2d 1201, 1208 (6th Cir. 1980).

. . .

. . . The release provision of the Agreement states that Divine Tower "releases, acquits, forever discharges, and covenants not to sue the Divine Family (collectively and individually) . . . and all of their respective agents . . . [and] **attorneys** . . . from any and all causes of action, charges, attorneys' fees, costs, claims, demands, damages, losses, expenses, liabilities, obligations, and actions whatsoever . . . ." Settlement Agr., ¶ 5 (emphasis added).

The Court finds that the counterclaim sufficiently alleges that the Kegler Attorneys were intended beneficiaries of the Settlement Agreement. The plain language of the Agreement identifies the Divine Family's attorneys as persons that Divine Tower promised not to sue. The counterclaim alleges that the Kegler Attorneys served as the Divine Family's attorneys. Thus, on the face of the counterclaim and the language of the Settlement Agreement attached thereto, it appears that the contracting parties intended to give the Kegler Attorneys, as attorneys for the Divine Family, the benefit of Divine Tower's promise not to sue.

Sept. 24, 2008 Opinion and Order, pp. 4-7.

**B.  Discussion**

Kegler Brown has now filed a motion for summary judgment on the counterclaim. The elements of a breach of contract claim are "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Jarupan v. Hanna, 173 Ohio App.3d 284, 294, 878 N.E.2d 66, 73 (Ohio Ct. App. 2007) (citing cases).

Divine Tower and Apollo's response to the motion does not dispute that Kegler Brown is entitled to summary judgment on the issue of liability. Kegler Brown has established that the Settlement Agreement exists and that its plain language made the Kegler Attorneys intended beneficiaries. Kegler Brown has further established that Divine Tower and Apollo promised not to sue the attorneys of the Divine Family, but they breached that promise in this lawsuit by asserting claims arising out of the Kegler Attorneys' legal representation of the Divine Family.

In Ohio, where there is a breach of a covenant not to sue, the damages are measured by the attorney fees incurred as a result of the breach. See S&D Mech. Contractors, Inc. v. Enting Water Conditioning Systems, Inc., 71 Ohio App.3d 228, 241, 593 N.E.2d 354, 363 (Ohio Ct. App. 1991); Complete General Constr. Co. v. Koker Drilling Co., No. 02AP-63, 2002 WL 31031614, at *2 (Ohio Ct. App. Sept. 12, 2002); Shanker v. Columbus Warehouse Ltd. P'ship, No. 99AP-772, 2000 WL 726786, at *4-5 (Ohio Ct. App. June 6, 2000); see also Anchor Motor Freight, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 377, 700 F.2d 1067, 1072 (6th Cir. 1983).

Kegler Brown seeks to recover the attorney fees incurred as a proximate result of the breach of the covenant not to sue. Attached to the motion for summary judgment and to the reply brief are declarations of counsel, with itemized listings of the attorney fees purportedly incurred. The grand total in damages sought is $74,367.50. The hourly billed rates range from $110 to $370. The damages sought can be broken down into the following categories of attorney expenses:

(1) reviewing the litigation brought by Divine Tower and Apollo against the Divine Family and reviewing the litigation's settlement and dismissal ($3963);

(2) drafting the March 20, 2007 motion for summary judgment, which argued that all of the claims against Kegler Brown were released ($32,987.50);

(3) reviewing plaintiffs' opposition to the motion for summary judgment and drafting a reply brief ($14,600);

(4) discovery relating to the Settlement Agreement and drafting a motion to compel ($4482);

(5) reviewing the September 4, 2007 Opinion ($374);

11

(6) researching and drafting the counterclaim ($1955);

(7) drafting an opposition brief to plaintiffs' October 29, 2007 motion to dismiss the counterclaim ($10,843);

(8) drafting the November 17, 2008 motion for summary judgment on the counterclaim ($1433); and

(9) reviewing plaintiffs' opposition to the motion for summary judgment on the counterclaim and drafting a reply brief ($3730).

See Nov. 17, 2008 and Dec. 24, 2008 Declarations of Marion H. Little, Jr.

Divine Tower and Apollo make three objections to the damages sought by Kegler Brown. Two of these objections are without merit. First, they argue that Kegler Brown failed to mitigate its damages, and by "mitigate" they do not mean that the overall amounts or the hourly rates were unreasonably high. Rather, Divine Tower and Apollo argue that Kegler Brown should have adopted a different litigation strategy that would have included filing for injunctive relief. This argument must be rejected. It is not for the court to second-guess the litigation strategy of counsel, see Woolridge v. Marlene Industries Corp., 898 F.2d 1169, 1177 (6th Cir. 1990), particularly when the proposed alternate strategy would have been futile. The dispute would not have been appropriate for injunctive relief because the breach of the covenant not to sue did not cause irreparable harm to Kegler Brown. Rather, the harm done could be remedied by a breach of contract claim and the damages could be measured by the attorney fees incurred as a result of the breach. This is the strategy that Kegler Brown choose to adopt when it filed its counterclaim.

The second objection raised by Divine Tower and Apollo is that Kegler Brown has not established that it has suffered damages because there is no evidence that the amounts billed by counsel were actually paid for by Kegler Brown. In essence, the argument is that Kegler Brown has not shown that it has paid any money out-of-pocket. This argument too must be rejected. Kegler Brown has demonstrated that it hired counsel who provided legal services in defending Kegler Brown against the released claims. The evidence shows that Kegler Brown owes a monetary debt to counsel for those services and has thereby incurred a loss for purposes of the claim for breach of contract. See Luft v. Young, 114 Ohio App. 73, 75, 180 N.E.2d 292, 294 (Ohio Ct. App. 1961) (incurring a debt constitutes

a pecuniary loss for purposes of common law claims). Whether Kegler Brown has actually paid the debt to counsel is a matter between them.

The third objection is this: because the court held that some claims were released and other claims were not released and because the issues and arguments were intertwined, it is impossible to determine, for purposes of summary judgment, what portion of the fees were incurred as a result of only the released claims. Divine Tower and Apollo argue that there should be a trial as to the damages that can be traced to the released claims. The court agrees that Kegler Brown is entitled to only those damages that were proximately caused by the breach; however, the court also finds that the proper amount of damages can be ascertained from the evidence already submitted and that a trial would needlessly incur even more expense.

The court's findings as to damages are as follows:

(1) *Reviewing the litigation brought by Divine Tower and Apollo against the Divine Family and reviewing the litigation's settlement and dismissal ($3963), (2) drafting the March 20, 2007 motion for summary judgment, which argued that all of the claims against Kegler Brown were released ($32,987.50), and (3) reviewing plaintiffs' opposition to the motion for summary judgment and drafting a reply brief ($14,600).* It is to these damages that Divine Tower and Apollo's objection makes the most sense. The motion for summary judgment was partially successful and it would therefore be unfair to find that the breach caused 100% of the expenses related to the motion. The court finds that the proper measure of damages is 50% of the expenses. Of the twelve claims asserted in the complaint by Divine Tower and Apollo, the court found that five were fully released and that the fraud and Section 10(b) claims of Apollo were partially released. Thus, $25,775.25, which represents 50% of these expenses, is awarded to Kegler Brown as damages proximately caused by the breach. The court includes the category (1) expenses as being related to the motion for summary judgment because they were for information-gathering services, which ultimately led to Kegler Brown to become aware of the Settlement Agreement, and for preparation of Kegler Brown's defense against the complaint.

(4) *Discovery relating to the Settlement Agreement and drafting a motion to compel ($4482).* These expenses were not proximately caused by the breach. The cause of these expenses was alleged misconduct by

13

plaintiffs during discovery that led to the filing of a motion to compel. The Federal Rules of Civil Procedure provide the appropriate remedies for discovery misconduct.

(5) *Reviewing the September 4, 2007 Opinion ($374).* These expenses were not proximately caused by the breach. Counsel for Kegler Brown would have reviewed the order regardless of whether the court had found that certain claims were released.

(6) *Researching and drafting the counterclaim ($1955),* (7) *drafting an opposition brief to plaintiffs' October 29, 2007 motion to dismiss the counterclaim ($10,843),* (8) *drafting the November 17, 2008 motion for summary judgment on the counterclaim ($1433), and (9) reviewing plaintiffs' opposition to the motion for summary judgment on the counterclaim and drafting a reply brief ($3730).* All of these expenses were proximately caused by the breach – plaintiffs' decision to pursue claims that had been released is what forced Kegler Brown to file a counterclaim to recover its damages. When a party breaches a covenant not to sue, the non-breaching party may recover costs incurred in defending itself against the released claims (here, pursuing summary judgment against the released claims) and may also recover costs incurred in making itself whole (here, pursuing a counterclaim for breach of contract). See, e.g., S&D Mech., 71 Ohio App.3d at 241, 593 N.E.2d at 363 (Ohio Ct. App. 1991); Shanker, 2000 WL 726786, at *5 ("When a party breaches a settlement agreement to end litigation and the breach causes a party to incur attorney fees in continuing litigation, those fees are recoverable as compensatory damages in a breach of settlement claim."); Astor v. Int'l Bus. Machines Corp., 7 F.3d 533, 540 (6th Cir. 1993) (applying Ohio law and permitting recovery of attorney fees incurred in relation to defendant's counterclaim for breach of a covenant not to sue); Anchor Motor Freight, 700 F.2d at 1072 (same); Aho v. Cleveland-Cliffs, Inc., 219 Fed. Appx. 419, 424 (6th Cir. 2007) ("This Court, while interpreting Ohio law, has repeatedly enforced covenants not to sue. . . . any breach will entail liability for damages, including the most certain of all – defendant's litigation expense.") (internal citation and quotation omitted); see also Wellens v. Columbia Casualty Co., No. 91-1049, 1991 WL 216484, at *2 (10th Cir. Oct. 23, 1991) (explaining rule that attorney fees are recoverable when they are the subject of the action, such as in a claim for breach of a covenant not to sue).

Accordingly, the court finds that Kegler Brown has demonstrated that it is entitled to damages in the amount of $43,736.25.

## V. CONCLUSION

For the reasons stated above, the cross-motions for summary judgment on Divine Tower's bankruptcy preference claim (docs. 203, 214) are GRANTED IN PART AND DENIED IN PART. Divine Tower has demonstrated under 11 U.S.C. § 547(b) that it may avoid $21,859.75 of the February 22, 2002 transfer made by Divine Tower to Kegler Brown. However, as to the remainder of the transfer, $41,647.43, Kegler Brown has established that it is entitled to summary judgment under the "ordinary course of business" exception of § 547(c)(2).

Furthermore, Kegler Brown's motion for summary judgment as to its counterclaim for breach of contract (doc. 204) is GRANTED and Kegler Brown is awarded $43,736.25 in damages.

        s/ James L. Graham  
        JAMES L. GRAHAM  
        United States District Judge

DATE: March 26, 2009